In the Matter of the AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS et al., Respondents-Appellants, v BOARD OF TRUSTEES OF THE STATE UNIVERSITY OF NEW YORK et al., Appellants-Respondents.

Second Department, April 15, 1991

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Susan B. Blum* of counsel), for appellants-respondents.

*Gary L. Francione (Theresa J. Macellaro* and *Eugene Underwood, Jr.,* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

SULLIVAN, J.

In this CPLR article 78 proceeding, the petitioners sought, *inter alia,* a judgment which, in effect, would compel the appellants to permit public attendance at meetings of the Laboratory Animals Use Committee (hereinafter LAUC) of the State University of New York at Stony Brook (hereinafter Stony Brook) under the "Open Meetings Law" *(see,* Public Officers Law § 100 *et seq.).* Inasmuch as we find that the LAUC is not a "public body" within the meaning of Public Officers Law § 102 (2), we reverse so much of the judgment of the Supreme Court as granted that branch of the petition which was to compel it to open its meetings to the petitioners and the public.

I

Stony Brook conducts extensive biomedical research, some of which involves the use of laboratory animals. Since Stony Brook purchases live animals in commerce for these activities, and also receives funding from various agencies of the United States such as the National Institute of Health to conduct this research, it meets the definition of a "research facility" under the Federal Animal Welfare Act *(see,* 7 USC § 2132 [e]). As

such a "research facility", Stony Brook must register with the Secretary of Agriculture of the United States (see, 7 USC § 2136) and comply with the standards established by the Secretary governing the handling, care and treatment of animals and the justification for and use of animals in experimentation (see, 7 USC § 2143 [a]). This Federal statute also mandates the creation of a LAUC, the members of which are to be appointed by the chief executive officer of the research facility (see, 7 USC § 2143 [b] [1]). The LAUC must consist of not fewer than three members, at least one of whom shall be a veterinarian, and one of whom shall be a public member, i.e., not affiliated in any way with the facility (see, 7 USC § 2143 [b] [1] [B] [i]). A majority of the committee members shall constitute a quorum (see, 7 USC § 2132 [m]), and such a quorum is required for all formal actions of the committee (see, 7 USC § 2143 [b] [2]).

The LAUC is required to inspect all animal study areas and animal research facilities, as well as to review all practices involving pain to animals and the condition of animals, at least semiannually (see, 7 USC § 2143 [b] [3]). Following each inspection, the LAUC must file an inspection certification report at the research facility. This report must be available for inspection by the Animal and Plant Health Inspection Service and any funding Federal agency for a period of three years (see, 7 USC § 2143 [b] [4] [A], [B]).

The petitioners American Society for the Prevention of Cruelty to Animals (hereinafter ASPCA) and Bide-a-Wee Home Association (hereinafter Bide-a-Wee) are nonprofit corporations having among their corporate purposes the prevention of cruelty to animals and the alleviation of the suffering of distressed animals. The individual petitioners are members of the ASPCA and Bide-a-Wee and are activists in the animal welfare movement. The petitioners sought permission to attend all meetings of the Stony Brook LAUC under the Open Meetings Law (see, Public Officers Law § 100 et seq.). This request was denied by Stony Brook's vice-provost for research and graduate studies. Thereafter, this CPLR article 78 proceeding was commenced. The Supreme Court, Suffolk County (Doyle, J.), found that the Stony Brook LAUC was a public body performing a governmental function within the meaning of Public Officers Law § 102 and hence was subject to the provisions of the Open Meetings Law (Matter of American Socy. for Prevention of Cruelty to Animals v Board of Trustees of State Univ., 143 Misc 2d 522). We disagree.

## II

The appellants-respondents make a variety of arguments in support of reversal, including claims of qualified research privilege and confidentiality of matters coming before the LAUC. We find, however, that their claim that the LAUC is not a "public body" under Public Officers Law § 102 (2) is dispositive of these proceedings.

Public Officers Law § 102 (2) defines the term "public body" in the following manner: " 'Public body' means any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, *performing a governmental function for the state or for an agency or department thereof,* or for a public corporation as defined in section sixty-six of the general construction law, or committee or subcommittee or other similar body of such public body" (emphasis supplied). There is no doubt that the Stony Brook LAUC is an entity mandated by the Federal Animal Welfare Law consisting of two or more members for which a quorum is required. However, the relevant inquiries presented by this appeal concern whether the LAUC performs any governmental function, and if so, whether that function is being performed for the State of New York or any agency or department thereof.

In seeking to resolve these questions, an examination of the legislative declaration underlying the Open Meetings Law is instructive. It provides as follows: "It is essential to the maintenance of a democratic society that the public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy. The people must be able to remain informed if they are to retain controls over those who are their public servants. It is the only climate under which the commonweal will prosper and enable the governmental process to operate for the benefit of those who created it" (Public Officers Law § 100).

The Federal statute mandating the creation of LAUCs applies to all "research facilities" (e.g., those in State-operated universities as in this case, as well as those in privately owned and operated universities and private corporate research facilities, such as those in pharmaceutical and cosmetic companies). However, the operation of committees within the structure of private universities and corporations clearly does not

fall within the purview of the foregoing statement of legislative intent underlying the Open Meetings Law of New York State. Furthermore, while the humane treatment of animals may well constitute public business, it is firmly established that not every bit of public business constitutes a governmental function *(see, Matter of Dawson [Knox], 231 App Div 490, affd sub nom. People ex rel. Dawson v Knox, 267 NY 565; Fisher v City of Mechanicville, 225 NY 210; Matter of Poughkeepsie Newspaper Div. of Gannett Satellite Information Network v Mayor's Intergovernmental Task Force on N. Y. City Water Supply Needs, 145 AD2d 65).* It is manifestly apparent that the Stony Brook LAUC is *not* involved in "deliberations and decisions that go into the making of public policy" (Public Officers Law § 100). Rather, the public policy involved in this case already has been established by the United States Congress in enacting the Animal Welfare Act *(see, 7 USC § 2131 et seq.)* and is implemented by the standards, rules, regulations and orders promulgated by the Secretary of Agriculture of the United States *(see, 7 USC § 2143 [a]).* It is therefore difficult to discern how opening the meetings of the Stony Brook LAUC would further the laudatory aims of New York's Open Meetings Law.

Returning to the definition of a "public body" under Public Officers Law § 102 (2), it further appears that the members of the Stony Brook LAUC do not perform a "governmental function". At most, it appears that the LAUC reviews applications for the use of animals in research and/or experimentation and conducts semiannual inspections. In connection with the review of applications, the LAUC functions as an advisory body for the chief executive officer of the appointing research facility and/or the funding agency. This is not an exercise of the power of the sovereign and hence is not a governmental function *(see, Goodson Todman Enters. v Town Bd., 151 AD2d 642; Matter of Poughkeepsie Newspaper Div. of Gannett Satellite Information Network v Mayor's Intergovernmental Task Force on N. Y. City Water Supply Needs, supra; New York Pub. Interest Research Group v Governor's Advisory Commn., 133 Misc 2d 613, affd 135 AD2d 1149; Kingston Assocs. v LaGuardia, 156 Misc 116, affd 246 App Div 803).*

Similarly, the advisory function of the LAUC members is not performed for the State of New York or for any of its agencies or departments. Indeed, however the LAUC's function is characterized, it is clear that its duties are being

performed for, at the mandate of, and under the applicable standards of, the Federal Government.

The petitioners and the Supreme Court relied on *Matter of MFY Legal Servs. v Toia* (93 Misc 2d 147) to support the position that LAUC meetings should be open to the public. This reliance is misplaced, however, as the case before us is clearly distinguishable from that decision. *MFY Legal Servs.* concerned a request to open the meetings of a medical advisory committee, the creation of which was mandated by New York's Social Services Law § 365-c. Moreover, the function of this committee was to advise the Commissioner of Social Services with respect to health and medical care rendered to the needy under article 5, title 11 of the Social Services Law. Further, the 20 members of this committee were appointed by the Governor for three-year terms with the advice and consent of the Senate. These facts are at such variance with those presented herein as to render the decision in *MFY Legal Servs.* that the medical advisory committee was subject to the open meetings law inapposite. It further appears that our decision in *Matter of Poughkeepsie Newspaper Div. of Gannett Satellite Information Network v Mayor's Intergovernmental Task Force on N. Y. City Water Supply Needs (supra)*, insofar as it holds that advisory committees do not perform a governmental function, has undermined the continued viability of the decision in *MFY Legal Servs.*

### III

In sum, we find that the Stony Brook LAUC is not a "public body" within the meaning of the Open Meetings Law, and the judgment of the Supreme Court must be reversed insofar as appealed from and that branch of the petition which was, in effect, to compel the LAUC to open its meetings to the petitioners and other members of the public must be dismissed. In view of our determination that the LAUC is not a "public body," we do not consider the other arguments advanced by the appellants-respondents.

While the petitioners filed a notice of cross appeal seeking to appeal from so much of the judgment of the Supreme Court as denied their requests (1) to void past actions of the Stony Brook LAUC, (2) for attorneys' fees, and (3) for sanctions, they have not perfected their cross appeal as required by this court's rules *(see, 22 NYCRR former 670.20 [d], [e])* or argued these points in their brief or on oral argument. Accordingly, the cross appeal is dismissed.

THOMPSON, J. P., KUNZEMAN and ROSENBLATT, JJ., concur

Ordered that the cross appeal is dismissed, without costs or disbursements, for failure to perfect the same in accordance with the rules of this court (22 NYCRR former 670.20 [d], [e]); and it is further,

Ordered that the judgment is reversed insofar as appealed from, on the law, without costs or disbursements, and that branch of the petition which was, in effect, to compel the Laboratory Animals Use Committee to open its meeting to the petitioners and other members of the public, is denied.